UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LATISHA THOMAS,

              Plaintiff,

  -against-

THE CITY OF NEW YORK, LIEUTENANT LEE, P.O. JEFFREY AUGUSTIN [SHIELD # 13952], P.O. SAFFRANCE [SHIELD # 30012], P.O. LANZA [SHIELD # 17342], SERGEANT CHARLES BURKE [SHIELD # 1167], P.O. GREENWAY [TAX REG. 938616], P.O. WILSON [TAX REG. # 907590], P.O. H. [TAX REG. # 941189], GREGORY VOIGT, MARGARET D. BLOW, SHERLIVA MUCHINSON, 248 MADISON STREET HOUSING DEVELOPMENT FUND CORPORATION, PETER NAKOS, NAPCO HOLDINGS LLC, and JOHN DOE and JANE DOE #1-16,

              Defendants.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
12-CV-5061 (FB) (SMG)

*Appearances:*
*For the Plaintiff:*
UGOCHUKWU UZOH, ESQ.
Ugo Uzoh, P.C.
304 Livingston Street, Suite 2R
Brooklyn, NY 11217

*For Defendants Napco Holdings LLC and Peter Nakos:*
LESLIE PEREZ-BENNIE, ESQ.
Wenig Saltiel LLP
26 Court Street, Suite 1200
Brooklyn, NY 11242

**BLOCK, Senior District Judge:**

        This lawsuit arises from a dispute between plaintiff Latisha Thomas and her two sisters over the occupancy of an apartment that was leased by plaintiff's deceased parents. Plaintiff asserts a litany of claims in her amended complaint against the City of New York ("the City"), several police officers, several employees of the Kings County District Attorney's

office, Sherlivia Murchison (her older sister), Margaret Blow (her younger sister), the 248 Madison Street Housing Development Fund Corporation ("Housing Corp."), Peter Nakos ("Nakos," the building administrator), and Napco Holdings LLC (property management company and Nakos's agent). She raises the following causes of action: (1) 21 claims pursuant to 42 U.S.C. § 1983 against all defendants; (2) municipal policy and failure to train, supervise, and discipline against the City; (3) conspiracy pursuant to 42 U.S.C. § 1985 against all defendants; (4) 5 state constitutional claims; (5) assault and battery against the City, the officers, Blow, and Murchison; (6) 13 state tort claims against all defendants; (7) breach of contract against Housing Corp., Napco Holdings LLC, and Nakos; (8) negligent and intentional infliction of emotional distress against all defendants; and (9) negligent hiring and retention against the City.

Nakos and Napco Holdings LLC ("the Napco defendants") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the federal claims (i.e., the §§ 1983 and 1985 claims) for failure to state a claim. They also ask the Court to decline to exercise supplemental jurisdiction over the state law claims or to dismiss them on the merits. For the reasons set forth below, the federal claims are dismissed; however, the state claims, with the exception of false arrest, shall proceed.

**I.     Factual Background**

Plaintiff's amended complaint sets forth the following facts, which the Court assumes to be true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009).

Plaintiff's parents leased an apartment pursuant to a lease that listed plaintiff

2

and Blow (but not Murchison) as occupants. Their parents died in April 2011, though plaintiff alleges that the lease remained valid and that she was entitled to renew it.

On June 3, 2011, Murchison assaulted plaintiff in the apartment, leading plaintiff to obtain an order of protection. On July 1, "the apartment management staff working in concert with Margaret D. Blow" changed the apartment's locks but did not provide plaintiff with keys. Am. Compl. ¶¶ 30-31. Despite plaintiff's requests for keys from the staff and the superintendent, she did not receive any. The superintendent instead advised her to change the locks herself. Plaintiff filed a complaint with the police, who told her to change the locks and to have the superintendent deliver the keys to the Napco defendants and the occupants. Plaintiff changed the locks on July 6 and told the superintendent to pick up the keys. He instructed her to leave the keys with her neighbor; however, he never picked them up.

The next day, Murchison broke the locks. Plaintiff filed another complaint with the police, and they served the order of protection on Murchison. When Blow stopped by the apartment on July 8 to remove some property, the door was open due to the broken locks. "[U]pon information and belief, Margaret D. Blow, Murchison, and the superintendent contacted the police and informed the police that the plaintiff illegally locked out Margaret D. Blow by changing the locks." *Id.* ¶ 50. Later that day, "the police officers, acting in concert with Margaret D. Blow, Murchison, and apartment management staff including the superintendent, arrested plaintiff" and charged her with unlawful eviction. *Id.* ¶ 51.

Though plaintiff was released, she was re-arrested on August 8 for unlawful eviction. The officers told her they were working "in concert with Margaret D. Blow and

3

Murchison" to obtain a warrant to forcibly remove her for a mental health evaluation. *Id.* ¶ 70. They did not allow plaintiff to inspect the warrant, and forced her to turn over her keys. The officers brought plaintiff to the hospital to be evaluated, but she was immediately discharged. She was then taken to the precinct in handcuffs.

On August 11, after being released from custody, plaintiff tried to return to her apartment but no longer had keys. Nakos certified in writing that she was the sole occupant. She brought the lease and certification to the precinct and requested assistance. Back at the apartment, however, "acting in concert with Margaret D. Blow," the officers assaulted plaintiff, handcuffed her, and arrested her for criminal contempt. *Id.* ¶ 98.

On September 28, 2011, plaintiff obtained an order from the housing court, granting her access to the apartment for one day. She discovered that much of her personal property was missing. Plaintiff initiated an illegal lockout proceeding against Blow, and the housing court ruled on January 3, 2012, that plaintiff was entitled to possession of the apartment. Plaintiff showed the order to the police and requested their help in restoring her to possession. The police instead threatened to arrest her. Plaintiff also showed the order to the apartment management staff and Nakos; however, they "refused to restore plaintiff to possession" and told her that she needed Blow's written permission. *Id.* ¶¶ 130-31.

The July charges were finally dismissed on March 20, 2012, the August 8 charges were dismissed on December 29, 2011, and the August 11 charges were dismissed on October 5, 2011. On October 9, 2012, plaintiff filed this action. At a conference regarding the Napco defendants' anticipated motion to dismiss, the Court expressed doubt over the viability of the federal claims against these defendants and instructed plaintiff to decide whether to withdraw

those claims or file an amended complaint. *See* Dkt. Entry 12/18/12. Plaintiff opted to amend her complaint. The Napco defendants now move to dismiss the charges against them.[1]

## II.    Federal Claims

### A.    Section 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Though the Napco defendants are private actors, plaintiff seeks to hold them liable under a joint action or joint engagement theory.

#### 1.    The Allegations About the Napco Defendants

To analyze allegations of state action, the Court begins "by identifying the specific conduct of which the plaintiff complains." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (internal quotation marks omitted). With respect to the Napco defendants, the amended complaint alleges that: (1) the apartment management staff worked in concert with Blow to change the locks without supplying new keys; (2) the superintendent then advised plaintiff to change the locks; (3) Blow, Murchison, and the superintendent told the police that plaintiff changed the locks and locked Blow out; (4) the police officers, in concert with Blow, Murchison, and apartment management staff arrested plaintiff on July 8 and August 8; and (5) the Napco defendants refused to help restore her to possession after the

---

[1] Defendant City of New York filed an answer to the amended complaint. Officer defendants Augustin, Burke, and Souffrance (identified in the caption as "Saffrance") filed a separate answer, which also notes that Lieutenant Lee, P.O. Lanza, Sergeant Charles Burke, P.O. Greenaway, P.O. Wilson, P.O. H., and Gregory Voigt have not been served with process. Blow and Murchison have not appeared in this action.

5

court order.

Counsel made additional allegations in plaintiff's memorandum of law opposing the motion to dismiss. For example, the memorandum states that prosecution was based on the false information and charge from the Napco defendants, Blow, and the police, whereas the amended complaint identifies only the police and Blow. *See id.* ¶¶ 66, 93, 121-22. "It is well established that plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss," *Miley v. Hous. Auth. of City of Bridgeport*, --- F. Supp. 2d ----, 2013 WL 676105, at *9 (D. Conn. 2013) (internal quotation marks and alteration omitted), and therefore the Court shall not consider the assertions raised for the first time in plaintiff's memorandum, *see also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint.").[2]

### 2.    Joint Action Theory

"[A] private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (internal quotation marks omitted). "The fundamental question . . . is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell–Baker v. Kohn*, 457 U.S. 830, 838

---

[2]Although the Court gave plaintiff the opportunity to amend her initial complaint for the sole purpose of adding allegations about the Napco defendants, she still did not include these new facts in her amended complaint. Moreover, even if the Court were to consider them, these vague, conclusory allegations do not adequately plead state action and thus would not change the outcome of the present motion.

(1982)). This requires "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks omitted). "The provision of information to, or the summoning of, police officers is not sufficient to constitute joint action with state actors for purposes of § 1983, even if the information provided is false or results in the officers taking affirmative action." *Anilao v. Spota*, 774 F. Supp. 2d 457, 498 (E.D.N.Y. 2011). Likewise, "if a police officer's actions are due to the officer's own initiative, rather than the directive of a private party, the private party will not be deemed a state actor." *Id.*

Plaintiff contends that she has adequately pled joint action based on her allegations that Blow, Murchison, and the superintendent contacted the police on July 8, and that the police arrested her while working in concert with Blow, Murchison, and apartment management. These bare allegations are insufficient for inferring that the Napco defendants worked jointly with the police to evict and arrest plaintiff. The complaint does not allege that they contacted the police at the same time, in the same manner, or pursuant to some agreement, nor does it allege that they ever met with police or were present at the arrests.

Quoting *Forbes v. City of New York*, plaintiff states that "courts find joint action where, pursuant to a *prearranged custom, practice, or policy*, the police rely disproportionately on an otherwise private actor's 'say-so' to make an arrest." 05-cv-7331, 2008 WL 3539936, at *8 (S.D.N.Y. Aug. 12, 2008). In *Forbes*, however, the plaintiff alleged that Lincoln Center and the City shared a goal of minimizing protests about the Great Lawn, described in detail the interaction between the security guards and the police, and offered evidence that the

7

summonses relied entirely on the guards' observations. *See id.* at *9 ("[T]he above fact pattern is consistent with joint action based on a mutual understanding or a 'meeting of the minds.'"). Here, by contrast, the complaint does not contain any factual allegations to suggest that the Napco defendants and the police were working pursuant to a prearranged practice. *See Missere v. Gross*, 826 F. Supp. 2d 542, 568 (S.D.N.Y. 2011) ("It might be *conceivable* that the Storm King and Village Defendants 'acted in concert' in taking these actions—if, for instance, Storm King submitted its deficient applications according to a pre-arranged conspiracy with the Village, which had agreed in advance to approve them—but the Complaint alleges no *facts* whatsoever that would support such an inference, and it cannot survive on mere speculation.").[3]

Finally, plaintiff contends that she has sufficiently pled conspiracy by alleging that the prosecutors commenced two actions based on false information and the charge levied by the Napco defendants. This claim fails because the amended complaint only alleges that the prosecutions were commenced based on false testimony from the police and Blow.

Accordingly, plaintiff's allegations are insufficient to deem the Napco defendants to be state actors under the joint action theory. *See Ciambriello*, 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.").

    3.    **Joint Engagement Theory**

Plaintiff alternatively seeks to hold the Napco defendants accountable under the

---

[3] Plaintiff alleges that Blow holds herself out as "an authorized confidential informant" for the City defendants and engages them to harass other people, including plaintiff, as a reward for her service. Am. Compl. ¶ 13. There is, however, no basis for imputing this allegedly improper relationship to the Napco defendants.

8

joint engagement theory. She relies on *Weintraub v. Board of Education of City of New York*, 423 F. Supp. 2d 38, 56-58 (E.D.N.Y. 2006), which held that a private actor may be liable under § 1983 based on the joint engagement theory if he sought police assistance in bad faith and with the intent to procure a false arrest.[4] *Weintraub* has also been characterized as a case in which "the plaintiff alleged prior incidents that demonstrated a long-standing vendetta against the plaintiff, which allowed the court to infer potential bad faith." *Chodkowski v. City of New York*, 06-cv-7120, 2007 WL 2717872, at *9 (S.D.N.Y. Sept. 11, 2007). Plaintiff argues that the Napco defendants' vendetta against her consists of changing the locks, failing to pick up the keys, and telling the police that plaintiff locked out Blow.

Unlike the longstanding vendetta in *Weintraub*, which consisted of 11 acts over more than 1 year, plaintiff alleges just 3 acts occurring within 1 week. Even at the motion to dismiss stage, there is no basis to infer bad faith from the Napco defendants' changing of the locks or their failure to pick up the keys. Further, even assuming that the Napco defendants made a false report to the police, bad faith cannot be inferred from this act alone. *See Chodkowski*, 2007 WL 2717872, at *9 (holding that the allegation that the defendant gave false information to the police, combined with the "conclusory statement that all the defendants acted with malice," does "not suffice to convert a private party into a state actor under § 1983"). Plaintiff has failed to allege sufficient facts to give rise to an inference of bad faith, and thus the joint engagement theory does not subject the Napco defendants to § 1983 liability.

---

[4]The Second Circuit has not reviewed this conclusion since its appellate review of *Weintraub* was "limited to the question of whether the First Amendment protects [Weintraub's] filing of a grievance." *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 200 (2d Cir. 2010).

9

B.    **Section 1985 Claim**

A § 1985(3) claim requires the plaintiff to "allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828-29 (1983).[5]  The "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Britt v. Garcia*, 457 F.3d 264, 270 n.4 (2d Cir. 2006) (internal quotation marks omitted).

Plaintiff's § 1985 claim against the Napco defendants must be dismissed due to her failure to adequately allege animus.  Her § 1985 allegation states:

> In an effort to find fault to use against the plaintiff, defendants conspired among themselves and conspired with other individuals to deprive plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to United States Constitution, because of her race, ancestry and/or ethnicity, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

Am. Compl. ¶ 152.  She does not self-identify with any race or class as part of her § 1985 cause of action.  The only identifying allegation is found in her claim for municipal liability:

> Defendant City of New York, acting through aforesaid NYPD and District Attorney, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, assaulting, illegally searching, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiff, *who is black*, on

---

[5]Section 1985 "has no state action requirement and thus reaches private conspiracies." *Emanuel v. Barry*, 724 F. Supp. 1096, 1099 (E.D.N.Y. 1989).

>   the pretext that they were involved in some crime or offense.

Am. Compl. ¶ 145 (emphasis added).  Even after amending her complaint, plaintiff fails to assert anything more than a conclusory allegation of animus.  There is nothing to suggest that the Napco defendants' actions were racially motivated.  Accordingly, this claim is dismissed. *See Temple of the Lost Sheep Inc. v. Abrams*, 930 F.2d 178, 185 (2d Cir. 1991) (affirming dismissal under Rule 12(b)(6) since the claims "were couched in terms of conclusory allegations and failed to demonstrate 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action' as required by section 1985(3)").

### III. State Claims

#### A. Declining to Exercise Supplemental Jurisdiction

Plaintiff's remaining claims against the Napco defendants are based in state law. The Napco defendants first urge the Court to dismiss these claims pursuant to 28 U.S.C. § 1367(c)(3), which allows district courts to decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."  The Second Circuit, however, has made clear that a district court may not decline to exercise jurisdiction over state law claims where federal claims remain against other defendants and the state law claims "form part of the same case or controversy." *Ciambriello*, 292 F.3d at 325 (internal quotation marks omitted); *see also Johnson v. City of New York*, 669 F. Supp. 2d 444, 453 (S.D.N.Y. 2009) ("[Section 1367(c)] discretion may only properly be exercised where no claims over which it has original jurisdiction remain against *any* defendant in the action.").  Here, federal claims remain against the other defendants, and the federal and state claims are part of the same case or controversy, namely the events related to plaintiff's allegedly unlawful

eviction. Thus, the Court does not have discretion to decline to reach the state law claims.

### B. Dismissal on the Merits of the State Law Claims

#### 1. Intentional Tort Claims

The Napco defendants argue that all of the state law claims are intentional torts, and (with the exception of unlawful eviction) are barred by the one-year statute of limitations. *See* N.Y. C.P.L.R. § 215(3) (stating that "an action to recover damages for assault, battery, false imprisonment, [or] malicious prosecution" must be "commenced within one year").

As an initial matter, the Napco defendants are incorrect in asserting that the state law claims against them are all intentional torts since the complaint alleges breach of contract and state constitutional claims. They are also incorrect in their cursory, generalized assertion that a tort accrues when a plaintiff suffers an injury. While the false arrest claim is time-barred since it accrued at the time of the arrests, the "claims for malicious prosecution and abuse of process do not accrue until the underlying action which is the basis for the claim is terminated in the plaintiff's favor by dismissal." *TADCO Constr. Corp. v. Dormitory Auth. of State of New York*, 700 F. Supp. 2d 253, 273 (E.D.N.Y. 2010). Plaintiff's July 8 and August 8 charges were dismissed within one year of the commencement of the present action.

Moreover, defendants are incorrect in asserting that a one-year limitations period applies to the rest of the tort claims (i.e., illegal and unreasonable stop, frisk, search, and seizure; negligence; conspiracy; special injury; harassment; abuse of power; tortious

interference with a contract; unjust enrichment; and trespass). For example, negligence and trespass claims "are governed by the three-year limitations period set forth in C.P.L.R. § 214(4)," and thus are timely. *Herrington v. Verrilli*, 151 F. Supp. 2d 449, 460 (S.D.N.Y. 2001). Further, with the exception of the false arrest claim, the Court will not dismiss the tort claims with a one-year limitations period at this stage because the Napco defendants have failed to demonstrate when these claims accrued. *See Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995) (recognizing that the defendant has the burden of proving when the cause of action accrued). The Napco defendants' cursory argument fails to establish that the statute of limitations defense "appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).

Finally, although plaintiff's claim for intentional and negligent infliction of emotional distress may be time-barred if limited to distress arising from her imprisonment, the Napco defendants do not make this argument and the complaint generally alleges distress based on extreme and outrageous conduct. Therefore, the Court will not dismiss this claim at this juncture. *See Neufeld v. Neufeld*, 910 F. Supp. 977, 984-85 (S.D.N.Y. 1996) (accepting "continuous and coercive harassment" as basis for tolling an emotional distress claim).

### 2. Unlawful Eviction Claim

"Wrongful eviction claims . . . are governed by the one year statute of limitations applicable to intentional torts." *Herrington*, 151 F. Supp. 2d at 460. Claims based on incidents prior to October 9, 2011, are thus untimely. Plaintiff alleges that this claim did not accrue until all of the defendants refused to restore her to possession after the January 2012 court order, since she did not realize until that point that she had been unlawfully evicted; however, the

Court finds no support for this view in her complaint. In light of the fact that "courts have held that the Statute of Limitations begins to run at such time that it is reasonably certain that the tenant has been unequivocally removed with at least the implicit denial of any right to return," *Gold v. Schuster*, 694 N.Y.S.2d 646, 648 (N.Y. App. Div. 1999), the statute of limitations started to run at the latest in August 2011 when the police took plaintiff's keys.

Therefore, the only timely claim arises from the final failure to help restore plaintiff to possession. Plaintiff alleges that she served the January 2012 court order on Nakos and the apartment management staff and requested that they restore her to possession by changing the locks and providing her with keys. The Napco defendants allegedly told plaintiff that she needed written permission from Blow before they could take any action.[6] The Napco defendants argue that plaintiff does not allege facts to demonstrate that their failure to help her regain possession amounts to an eviction. To establish an illegal eviction claim, a plaintiff must show he was "disseized, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means." RPAPL § 853. Plaintiff relies on N.Y.C. Admin. Code § 26-521(b), which provides in relevant part:

---

[6]Plaintiff erroneously relies on New York City Administrative Code ("N.Y.C. Admin. Code") § 26-521(a)(3), the unlawful eviction statute. The remedies for violating this statute are "to seek restoration to the premises by commencing a summary proceeding pursuant to [New York Real Property Actions and Proceedings Law] § 713(10)" or "to seek treble damages pursuant to R.P.A.P.L. § 853, the State's forcible entry and detainer statute." *Billips v. Billips*, 729 N.Y.S.2d 874, 876 (N.Y. Civ. Ct. 2001). RPAPL § 853 governs actions for damages, while N.Y.C. Admin. Code § 26-521 is enforced only through actions for criminal penalties, *see* N.Y.C. Admin. Code § 26-523, and civil penalties "brought in the name of the city by the corporation counsel," N.Y.C. Admin. Code § 26-524.

14

> It shall be unlawful for an owner of a dwelling unit to fail to take all reasonable and necessary action to restore to occupancy an occupant of a dwelling unit who . . . has been removed from or is otherwise prevented from occupying a dwelling unit as the result of any of the acts or omissions prescribed in subdivision a of this section and to provide to such occupant a dwelling unit within such dwelling suitable for occupancy, after being requested to do so by such occupant . . . , if such owner either committed such unlawful acts or omissions or knew or had reason to know of such unlawful acts or omissions . . . .

Although the Napco defendants contend that RPAPL § 749 explicitly directs only the sheriff, constable, or marshal to enforce a judgment awarding possession of real property, they do not articulate why RPAPL § 853's prohibition on using "unlawful means" should be construed to exclude acts made unlawful by N.Y.C. Admin. Code § 26-521(b). The Court therefore finds that plaintiff's allegations sufficiently state a claim for unlawful eviction.

### 3. Breach of Contract Claim

The Napco defendants contend that plaintiff's breach of contract claim should be dismissed because plaintiff does not provide specific factual allegations to support it.[7] The Court disagrees. Plaintiff alleges that she is named in the family composition section of the lease as an occupant entitled to renew the lease upon its expiration, and that the Napco defendants deprived her of the opportunity to renew the lease by changing the locks and unlawfully evicting her. These allegations are sufficient to survive the motion to dismiss.

### 4. New York Constitutional Claims

Because the Napco defendants make no mention of the alleged violations of the New York State Constitution, there is no basis for dismissing those claims at this time.

## IV. Conclusion

---

[7]This claim is timely given New York's six-year statute of limitations for breach of contract claims. *See* N.Y. C.P.L.R. § 213(2).

For the foregoing reasons, the Napco defendants' motion to dismiss is granted in part and denied in part. The federal claims are dismissed since plaintiff has failed to adequately plead that the Napco defendants were acting under color of law. The Court retains jurisdiction over the state law claims, given that they form part of the same case or controversy as the ongoing federal claims against the other defendants; however, the state law claim for false arrest is dismissed as time-barred, and the unlawful eviction claim is limited to the failure to restore plaintiff to possession after the January 2012 court order. The remaining state law claims survive against the Napco defendants, which are as follows: (1) violations of the New York State Constitution (Fourth Cause of Action); (2) the state tort claims of unlawful search and seizure, negligence, wrongful eviction, conspiracy, special injury, abuse of process, harassment, abuse of power, tortious interference with a contract, unjust enrichment, trespass, and malicious prosecution (Sixth Cause of Action); (3) breach of contract (Seventh Cause of Action); and (4) negligent and intentional inflection of emotional distress (Eighth Cause of Action).

**SO ORDERED.**

      /S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
July 23, 2013