UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

LATISHA THOMAS,                                    Case No. 12 CV 5061

                            Plaintiff,             (FB) (SMG)

           -against-                               **THRID AMENDED
                                                   COMPLAINT**

THE CITY OF NEW YORK, LIEUTENANT
JOHN LEE, P.O. JEFFREY AUGUSTIN                    JURY DEMAND
[SHIELD # 13952], P.O. JOSUE SOUFFRANCE
[SHIELD # 30012], P.O. JOE LANZA [SHIELD
# 17342], SERGEANT CHARLES BURKE
[SHIELD # 1167], P.O. TANISHA
GREENAWAY [TAX REG. # 938616],
SERGEANT MACHADO, SERGEANT SEAN
MCCLANE, SERGEANT ALAN MYRTHIL,
P.O. RICHARD DANESE [SHIELD # 12075],
MARGARET D. BLOW, SHERLIVIA
MURCHISON, 248 MADISON STREET
HOUSING DEVELOPMENT FUND
CORPORATION, PETER NAKOS, NAPCO
HOLDINGS LLC, AND JOHN DOE AND
JANE DOE,

                            Defendants.
----------------------------------------------------------------X

Plaintiff, LATISHA THOMAS, by her attorney, The Law Offices of UGO UZOH, P.C.,

complaining of the defendants herein, The City of New York, Lieutenant John Lee, P.O.

Jeffrey Augustin [Shield # 13952], P.O. Josue Souffrance [Shield # 30012], P.O. Joe

Lanza [Shield # 17342], Sergeant Charles Burke [Shield # 1167], P.O. Tanisha

Greenaway [Tax Reg. 938616], Sergeant Machado, Sergeant Sean McClane, Sergeant

Alan Myrthil, P.O. Richard Danese [Shield # 12075], Margaret D. Blow, Sherlivia

Murchison, 248 Madison Street Housing Development Fund Corporation, Peter Nakos,

Napco Holdings LLC, and John Doe and Jane Doe (collectively, "defendants"),

respectfully alleges as follows:

<u>NATURE OF THE ACTION</u>

1.        This is an action at law to redress the deprivation of rights secured to the

          plaintiff under color of statute, ordinance, regulation, custom, and/or to

          redress the deprivation of rights, privileges, and immunities secured to the

plaintiff by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. §1983 [and § 1985], [and arising under the law and statutes of the City and State of New York].

JURISDICTION

2.      The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

3.      As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

THE PARTIES

4.      Plaintiff is and was at all times material herein a resident of the United States and the State of New York.

5.      At all relevant times, defendants Lieutenant John Lee, P.O. Jeffrey Augustin [Shield # 13952], P.O. Josue Souffrance [Shield # 30012], P.O. Joe Lanza [Shield # 17342], Sergeant Charles Burke [Shield # 1167], P.O. Tanisha Greenaway [Tax Reg. 938616], Sergeant Machado, Sergeant Sean McClane, Sergeant Alan Myrthil, P.O. Richard Danese [Shield # 12075], John Doe and Jane Doe (hereinafter "defendant officers") were, upon information and belief, and still are, agents and/or officers employed by defendant City of New York.

6.      At all times herein, the defendant officers were acting under the color of their official capacity, and their acts were/are performed under color of the statutes and ordinances of the City of New York and/or the State of New York. Defendant officers were/are the servants, agents, and employees of their co-defendant, the City of New York, such that their acts are imputed to the City of New York.

7.      At all relevant times, the defendant City of New York was, upon information and belief, and still is a municipal corporation duly organized and existing

under the laws of the State of New York, and was/is the employer of the defendant officers, and the actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or at the direction of the defendant City of New York.

8.      Plaintiff is suing the defendant officers in their individual and official capacities.

9.      Defendant City of New York and the defendant officers are collectively referred to herein as "the City defendants".

10.     At all relevant times, defendants Sherlivia Murchison and Margaret D. Blow are plaintiff's older and younger sisters, respectively.

11.     At all relevant times, and upon information and belief, Margaret D. Blow held, and still holds, herself out as an authorized confidential informant for the City defendants who regularly engages the City defendants to assault, intimidate, threaten, harass, humiliate and abuse other people, including but not limited to the plaintiff, in reward for her alleged services to the City defendants.

12.     At all relevant times, the defendant 248 Madison Street Housing Development Fund Corporation (hereinafter "Housing Corp."), was, upon information and belief, and still is a domestic business corporation licensed, authorized and existing under and by virtue of the laws, statutes and charters of the State of New York.

13.     At all relevant times, the Housing Corp. was, upon information and belief, and still is the legal owner of a property and/or premises, including but not limited to an apartment situated therein that is identified as Apartment 4R, which is located at 248 Madison Avenue, Brooklyn, New York 11216 (hereinafter "subject premises").

14.     At all relevant times, defendant Peter Nakos ("Nakos"), was, upon information and belief, and still is the 7A Administrator appointed pursuant to N.Y. RPAPL § 778 to oversee the subject premises.

15.     At all relevant times, the defendant Napco Holdings LLC (hereinafter "Napco Holdings"), was, upon information and belief, and still is a domestic

company licensed, authorized and existing under and by virtue of the laws, statutes and charters of the State of New York.

16.     At all relevant times, Nakos was, upon information and belief, and still is the sole managing member of Napco Holdings, and has retained Napco Holdings as managing agent of the subject premises.

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

17.     At all relevant times, and upon information and belief, plaintiff's deceased parents, Margaret Thomas Blow and Gene Blow, were lessees of Apartment 4R of the subject premises (hereinafter "Apartment").

18.     That the plaintiff, together with Richard Thomas, Margaret D. Blow and Margaret D. Blow's infant son, NM, were listed in the family composition of the lease to the Apartment as occupants.

19.     That the lease was valid from approximately 2008 to March 2012.

20.     In or about April 2011, plaintiff's parents passed away.

21.     That the lease however remained valid after the death of plaintiff's parents, with plaintiff still listed as an occupant entitled to renew the lease upon the expiration of the lease pursuant to N.Y. $\text{C}_{\text{OMP}}$. $\text{C}_{\text{ODES}}$ R. & $\text{R}_{\text{EGS}}$. tit. 9, § 2523.5(b).

22.     At all relevant times, and upon information and belief, plaintiff had a separate private bedroom in the Apartment.

23.     At all relevant times, and upon information and belief, Margaret D. Blow had her own separate bedroom in the Apartment.

24.     On or about June 3, 2011, plaintiff was physically assaulted by Murchison at the Apartment.

25.     On or about June 17, 2011, plaintiff sought and obtained an order of protection against Murchison.

26.     That Murchison is not listed in the family composition of the aforementioned lease as an occupant.

27.     On or about July 1, 2011, the apartment management staff working in concert with Margaret D. Blow changed the locks to the Apartment.

28.     Neither Margaret D. Blow nor the apartment management staff provided plaintiff with any keys to the Apartment after changing the locks.

29.     On or about July 1, 2011, upon realizing that the locks to the Apartment had been changed, plaintiff contacted the apartment management staff by telephone and left a voice message requesting for keys to the Apartment.

30.     Plaintiff also met with Marlon Bradley, the former superintendent of the subject premises, and requested for keys to the Apartment.

31.     That neither Bradley nor the apartment management staff provided plaintiff with any keys to the Apartment.

32.     When plaintiff inquired as to how she could gain access to her home/the Apartment, Bradley advised plaintiff to change the locks herself.

33.     On or about July 1, 2011, after speaking with Bradley regarding keys to her home/the Apartment, plaintiff went to the NYPD-79th Precinct to file a complaint.

34.     Upon filing her complaint with the police officers at the NYPD-79th Precinct, plaintiff was advised by the police officers to change the locks on her home since she was illegally locked out.

35.     That the police officers also advised plaintiff to ask Bradley to pick up duplicate keys from her for both her landlord, Nakos and Napco Holdings, and the other legal occupants of the Apartment once she changed the locks on her home.

36.     On or about July 6, 2011, after not being able to gain access to her home for several days, plaintiff finally changed the locks in order to gain access to her home.

37.     Plaintiff also contacted Bradley on the same day, on or about July 6, 2011, and requested Bradley to pick up duplicate keys from her.

38.     Bradley instructed plaintiff to leave the duplicate keys with one of her neighbors, and did indicate that he would pick up the duplicate keys from plaintiff's neighbor.

39.     Plaintiff left the duplicate keys with her neighbor as she was directed by Bradley.

40.     Upon information and belief, Bradley did not pick up the duplicate keys from plaintiff's neighbor.

41.     On or about July 7, 2011, Murchison came to the Apartment and broke the new locks installed by plaintiff.

42.     Upon realizing that Murchison was at the Apartment and did break the new locks, plaintiff went to the NYPD-79th Precinct and filed a complaint with the police officers concerning Murchison.

43.     On or about July 7, 2011, the police officers served upon Murchison the aforementioned order of protection obtained by plaintiff against Murchison.

44.     On or about July 8, 2011, at approximately 3:00 p.m., Margaret D. Blow returned to the Apartment and removed some of her properties as well as some of plaintiff's properties from the Apartment.

45.     As of July 8, 2011, when Margaret D. Blow returned to the Apartment and removed the aforementioned properties, no new locks had been installed.

46.     That the door to the Apartment remained open, having been broken by Murchison on July 7, 2011.

47.     On or about July 8, 2011, upon information and belief, Margaret D. Blow, Murchison and other individuals contacted the police and informed the police that the plaintiff illegally locked out Margaret D. Blow by changing the locks.

48.     On or about July 8, 2011, at approximately 4:30 p.m., the defendant officers, acting in concert with Margaret D. Blow, Murchison and other individuals arrested plaintiff without cause at her home/the Apartment, and charged plaintiff with N.Y. Admin. Code § 26-521 195.05 'Unlawful eviction'.

49.     As of July 8, 2011, when the defendants arrested plaintiff and charged her with unlawful eviction, no new locks had been installed, and the door to the Apartment was open, the locks having been broken by Murchison on July 7, 2011.

50.     At the time of plaintiff's arrest on July 8, 2011, plaintiff did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

51.     That there were no locks on the door at the time when plaintiff was arrested on July 8, 2011, and charged with unlawful eviction.

52.     After Murchison broke the locks on July 7, 2011, no new locks were put in until on or about July 22, 2011, when plaintiff eventually installed new locks and provided keys to apartment management staff and all legal occupants of the Apartment.

53.     Following the arrest of the plaintiff on July 8, 2011, defendant officers tightly handcuffed plaintiff with her hands placed behind her back.

54.     That plaintiff who is asthmatic, and was suffering asthma attack at the time of her arrest on or about July 8, 2011, requested defendant officers to allow her to take her medications or provide her with medical care and/or treatment.

55.     Defendant officers denied plaintiff's request and refused to provide plaintiff with any medical care and/or treatment.

56.     Defendant officers also denied plaintiff's request to loosen the handcuffs which were tight and were cutting into plaintiff's skin.

57.     Following plaintiff's arrest on July 8, 2011, plaintiff was subjected to an illegal search and unnecessary use of force by defendant officers, with defendant officers pushing, pulling, dragging, shoving and kicking the plaintiff.

58.     After falsely arresting the innocent plaintiff, defendant officers transported plaintiff to the NYPD-79th Precinct.

59.     During the arrest, and while at the precinct, defendant officers subjected plaintiff to an intrusive and illegal bodily search.

60.     That plaintiff was detained for approximately two days prior to her arraignment.

61.     While plaintiff was awaiting arraignment, defendant officers met with prosecutors employed by the Kings County District Attorney's Office.

62.     During this meeting, the police officers falsely stated to prosecutors, among other things, that plaintiff illegally evicted Margaret D. Blow.

63.     Based on the false testimony of the police officers, a prosecution was commenced against plaintiff.

64.     On or about March 20, 2012, the false charge(s) levied against plaintiff was dismissed and sealed.

65.     Additionally, on or about August 8, 2011, at approximately 12:00 p.m., defendant officers acting in concert with Margaret D. Blow, Murchison, and other individuals arrested plaintiff without cause at her home/the Apartment, and charged plaintiff with N.Y. Admin. Code § 26-521 'Unlawful eviction'.

66.     Prior to the August 8, 2011 arrest, plaintiff was at her home/the Apartment preparing her lunch when she heard the police officers banging loudly on her door.

67.     When plaintiff opened her door, she was informed by defendant officers that they worked in concert with Margaret D. Blow and Murchison to obtain a purported warrant directing the police officers to forcibly remove plaintiff to the Woodhull Psychiatric Hospital for a mental health evaluation.

68.     Defendant officers then ordered plaintiff to immediately accompany them to the hospital, and threatened that they would forcibly remove plaintiff to the hospital if she refused to accompany them voluntarily.

69.     That plaintiff promptly requested for a copy of the aforesaid purported warrant.

70.     Defendant officers in turn merely flashed a piece of paper across plaintiff's face which paper was hurriedly pulled back the moment plaintiff stretched out her hands to get a hold of the piece of paper.

71.     After quickly withdrawing the piece of paper, defendant officers claimed that an application for a mental health evaluation of the plaintiff was submitted by plaintiff's deceased mother.

72.     That plaintiff promptly informed the police officers that her mother passed away in or about April 2011, and could not have submitted any application for a mental health evaluation in or about August 2011.

73.     Defendant officers quickly fired back and stated that they "don't f*****k care about any warrant", and insisted that plaintiff accompany them to the hospital or face the consequences of her failure to accompany them.

74.     As plaintiff began to walk towards an Ambulance called or requested by defendant officers, defendant officers demanded that plaintiff immediately hand over to them her keys to the Apartment as well as the keys to her private bedroom.

75.     Plaintiff promptly handed over her keys to the Apartment to defendant officers but declined to hand over keys to her private bedroom to defendant officers.

76.     Plaintiff instead handed over her bedroom keys to one of her neighbors.

77.     Defendant officers immediately went after plaintiff's neighbor and demanded that she hand over plaintiff's bedroom keys to them.

78.     Defendant officers threatened to arrest plaintiff's neighbor if she does not hand over plaintiff's bedroom keys to them.

79.     In the face of relentless threats and assault by defendant officers, plaintiff's neighbor handed over plaintiff's bedroom keys to defendant officers who in turn handed over the keys to Margaret D. Blow.

80.     That when defendant officers arrived at the Woodhull Psychiatric Hospital with the plaintiff, the attending physician, Dr. Moody Kuluvia, inquired from defendant officers as to their reason for bringing plaintiff to the hospital.

81.     Defendant officers then presented Dr. Kuluvia with a piece of paper which appeared to be the same piece of paper that they had previously flashed across plaintiff's face.

82.     As soon as Dr. Kuluvia glanced at the piece of paper, Dr. Kuluvia quickly tossed it aside and asked plaintiff to wait for her discharge papers.

83.     The moment Dr. Kuluvia presented plaintiff with her discharge papers, defendant officers forcibly grabbed plaintiff and tightly handcuffed plaintiff with her hands placed behind her back.

84.     When Dr. Kuluvia inquired as to the reason why plaintiff was placed in handcuffs, defendant officers stated that plaintiff was under arrest for illegal eviction.

85.     Eventually, defendant officers transported the innocent plaintiff to the NYPD-79th Precinct.

86.     While at the precinct, defendant officers subjected plaintiff to an intrusive and illegal bodily search.

87.     That plaintiff was detained for approximately two days prior to her arraignment.

88.     While plaintiff was awaiting arraignment, defendant officers met with prosecutors employed by the Kings County District Attorney's Office.

89.     During this meeting, defendant officers falsely stated to the prosecutors, among other things, that plaintiff illegally evicted Margaret D. Blow.

90.     Based on the false testimony of defendant officers, a prosecution was commenced against plaintiff.

91.     On or about December 29, 2011, the false charge(s) levied against plaintiff was summarily dismissed.

92.     Following plaintiff's arrest on or about August 8, 2011, and during the time while plaintiff was unlawfully detained at the Woodhull Psychiatric Hospital and at the precinct, some officers stayed back in the Apartment socializing with Margaret D. Blow.

93.     Subsequently, when plaintiff's girlfriend returned to the Apartment on August 8, 2011, the officers kicked plaintiff's girlfriend out of the Apartment and took away her set of keys to the Apartment.

94.     That the police officers did not allow plaintiff's girlfriend to remove any of her properties from the Apartment.

95.     Further, on or about August 11, 2011, at approximately 8:00 p.m., defendant officers acting in concert with Margaret D. Blow and other individuals arrested plaintiff without cause at or close to her home/the Apartment, and charged plaintiff with PL 215.51 'Criminal contempt in the first degree', among other charges.

96.     Prior to the August 11, 2011 arrest, plaintiff had attempted to return to her home/the Apartment after she was released from her unlawful incarceration following her prior arrest on or about August 8, 2011.

97.     When plaintiff arrived at her home/the Apartment, Margaret D. Blow refused to open the door to the Apartment.

98.     Because plaintiff did not have any keys to the Apartment, as defendant officers had seized her keys and handed them over to Margaret D. Blow who refused to open the door, plaintiff could not enter into her home/the Apartment and was therefore illegally locked out of her own home by the defendants.

99.     On August 11, 2011, after failing to gain entry into her own home/the Apartment, plaintiff met with Nakos who certified in writing on the same day, August 11, 2011, that plaintiff was the sole occupant of the Apartment.

100.    That plaintiff took a copy of her aforementioned deceased parents' lease and the Nakos' written certification to the NYPD-79th Precinct, presented said documents to defendant officers, and requested defendant officers to assist her in gaining access to her home/the Apartment.

101.    That plaintiff was directed by defendant officers to return to her home/the Apartment and wait for them.

102.    Eventually, after plaintiff had waited outside of the Apartment for approximately four hours, defendant officers arrived at the Apartment.

103.    Upon their arrival, defendant officers directed plaintiff to join them and Margaret D. Blow inside the Apartment.

104.    When plaintiff refused to join defendant officers and Margaret D. Blow in the Apartment, defendant officers then threatened to use force against her.

105.    The moment plaintiff entered into the Apartment, defendant officers locked the door to the Apartment and forcibly grabbed the plaintiff -- pushing, pulling, dragging, shoving and kicking plaintiff in the process.

106.    Eventually, defendant officers forcibly sat the plaintiff down on a couch.

107.    When plaintiff tried to get up from the couch, she was forcibly sat down on the couch again by defendant officers.

108.   Eventually, after berating the plaintiff for an extended period of time, defendant officers forcibly grabbed plaintiff and tightly handcuffed plaintiff with her hands placed behind her back.

109.   After handcuffing the plaintiff, defendant officers essentially dragged plaintiff by her arms causing plaintiff to sustain serious injuries on various parts of her body including but not limited to her arms, wrists, shoulder, back, and legs.

110.   Defendant officers transported the innocent plaintiff to the NYPD-79th Precinct.

111.   Upon plaintiff's arrival at the precinct, some of the police officers at the precinct indicated that Margaret D. Blow had called the precinct by telephone a little earlier and was screaming at the answering police officer.

112.   The police officers further indicated that the answering police officer who took the call from Margaret D. Blow had advised Margaret D. Blow to hang up the telephone and dial 911 if her call was about an emergency situation.

113.   Lee at some point grabbed plaintiff by her arms and forcibly removed the aforementioned lease and Nakos' written certification from plaintiff's pant pocket.

114.   While at the precinct, defendant officers subjected plaintiff to an intrusive and illegal bodily search.

115.   That plaintiff was detained for approximately two days prior to her arraignment.

116.   While plaintiff was awaiting arraignment, defendant officers met with prosecutors employed by the Kings County District Attorney's Office.

117.   During this meeting, defendant officers falsely stated to the prosecutors, among other things, that plaintiff assaulted Margaret D. Blow.

118.   Based on the false testimony of defendant officers, a prosecution was commenced against plaintiff.

119.   Defendant officers and Margaret D. Blow continued the malicious prosecution by offering false testimony to the Kings County Grand Jury.

120.     On or about October 5, 2011, the false charges levied against plaintiff were summarily dismissed by the Kings County Grand Jury.

121.     Following her release from her unlawful incarceration, and after numerous unsuccessful attempts to gain entry into her own home/the Apartment, the Civil Court of the City of New York, the Honorable Inez Hoyos, eventually issued an order dated September 28, 2011, granting plaintiff access to the Apartment on October 3, 2011, from 9:00 a.m. to 5:00 p.m.

122.     Plaintiff, upon gaining entry into the Apartment on October 3, 2011, discovered that many of her properties, including but not limited to her Xbox 360, Samsung Flatscreen Television, laptop, birth certificate, social security and other personal items were missing from the Apartment.

123.     Eventually, after plaintiff had initiated an illegal lockout proceeding against Margaret D. Blow and Nakos, the Civil Court of the City of New York, the Honorable Eleanora Ofshtein, issued an order dated January 3, 2012, restoring plaintiff to possession and granting final judgment for possession of the Apartment to plaintiff.

124.     That plaintiff subsequently served Judge Ofshtein's order dated January 3, 2012, upon the NYPD-79th Precinct as she was directed by the order, and requested the police officers to help restore her to possession in accordance with the order.

125.     Instead of assisting plaintiff, the police officers threatened to arrest plaintiff and did not provide plaintiff with any assistance.

126.     Additionally, plaintiff subsequently served the aforesaid Judge Ofshtein's order dated January 3, 2012, upon Nakos and requested Nakos, Napco Holdings and the Housing Corp. to restore her to possession by changing the locks and providing her with keys to her home/the Apartment.

127.     Nakos, Napco Holdings and the Housing Corp. refused to restore plaintiff to possession.

128.     Rather than comply with the aforesaid Judge Ofshtein's order dated January 3, 2012, and restore plaintiff to possession, Nakos, Napco Holdings and the Housing Corp. informed plaintiff that she must first seek and obtain

13

Margaret D. Blow's written permission before they could take any action to restore plaintiff to possession as directed by the order.

129.     That as a result of the conduct of the defendants as described herein, plaintiff was illegally locked out of her own home/the Apartment on or about August 8, 2011, and has yet to be restored to possession as directed by Judge Ofshtein.

130.     That each and every individual who responded to and/or was present at the location of the arrest and/or events described herein knew and was fully aware that plaintiff did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

131.     Nonetheless, defendants did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

132.     As a result of the aforesaid actions by the defendants, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, loss of rights to familial association, wages and financial losses, illegal eviction, pain and damage, and damage to reputation.

FIRST CAUSE OF ACTION: 42 U.S.C. § 1983 - against City defendants

133.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 132 of this complaint as though fully set forth herein.

134.     The conduct of the City defendants, Margaret D. Blow and Murchison, as described herein, amounted to false arrest, conspiracy, pattern of harassment, excessive use of force, abuse of power, failure to intervene, unlawful entry, unlawful taking of private property, malicious abuse of process, deliberate indifference to need for medical treatment and care, denial of freedom of speech, first amendment retaliation, denial of equal protection, discrimination, denial of reasonable accommodation, cruel & unusual punishment, fabrication of evidence, denial of right to a fair trial, denial of due process rights and malicious prosecution.

135.     The City defendants denied plaintiff treatment needed to remedy her serious medical condition and did so because of their deliberate indifference to plaintiff's need for medical treatment and care.

136.     Such conduct as described herein violated plaintiff's rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

137.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against the City defendants, individually and severally.

SECOND CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - against defendant City of New York

138.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 137 of this complaint as though fully set forth herein.

139.     Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

140.     Additionally, defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of paying its confidential informants and/or similarly situated individuals, including but not limited to defendant Margaret D. Blow, with money, sex, illicit drugs, police protection, and other corrupt favors in exchange for false and fabricated information/evidence against innocent citizens such as the plaintiff who did absolutely nothing wrong to warrant the level of torture and harm that she suffered at the hands of the defendants.

141.      Further, defendant City of New York, acting through District Attorney Charles J. Hynes and the Office of the District Attorney of the County of Kings, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise, and discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing of witnesses and informants, assessing the credibility of witnesses and informants, the initiation and/or prosecution of criminal actions, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the duty and/or obligation of candor toward the court.

142.      Defendant City of New York, acting through aforesaid NYPD and District Attorney, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, assaulting, illegally searching, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiff, who is black, on the pretext that they were involved in some crime or offense.

143.      The existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct, as documented in the numerous civil rights actions filed against the City of New York in the state and federal courts, and from a January 2006 statement by Deputy Commissioner Paul J. Browne that police commanders are permitted to set "productivity goals" (i.e., arrest quotas). *See Colon v. City of New York*, 2009 U.S. Dist. LEXIS 110520 (E.D.N.Y. Nov. 25, 2009) (Weinstein, J.). *See also* the following cases filed in this district: *Tyquan Myrick v. City of New York* (12 CV 2410); *Cymantha Holly v. City of New York* (12 CV 1826); *Robert Stephens v. City of New York*  (12 CV 1825); *Paul Lewis v. City of New York* (12 CV 1323); *James Burgess v. City of New York* (12 CV 1322); *Jeff Ores v. City of New York* (12 CV 535); *Alisha Brewster v. City of New York* (11 CV 4874); *Robert Cooper v. City of New York* (11 CV 4873, 11 CV 452); *Diane Dawson v. City of New York* (11 CV 4872); *Robert Rogers v. City of New York*, (11 CV 4870).

144.     That the issue of arrest quotas has been recently decided and/or it has been conclusively determined that officers of the New York Police Department are permitted, as a policy and/or practice, to use quotas to make arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

145.     That defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiff's injuries as described herein.

146.     The actions of defendants, acting under color of State law, deprived plaintiff of her due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in her person and property, to be free from abuse of process, and the right to due process.

147.     By these actions, defendants have deprived plaintiff of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

THIRD CAUSE OF ACTION: 42 U.S.C. § 1985 - against City defendants

148.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 147 of this complaint as though fully set forth herein.

149.     In an effort to find fault to use against the plaintiff, City defendants conspired among themselves and conspired with other individuals to deprive plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to United

States Constitution, because of her race, ancestry and/or ethnicity, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

150.    In light of the foregoing therefore, City defendant officers engaged in a conspiracy designed to deprive plaintiff of her constitutional and federal rights in violation of 42 U.S.C. § 1985.

151.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore stated.

FOURTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12 - against defendants

152.    By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 151 of this complaint as though fully set forth herein.

153.    By reason of the foregoing, and by arresting, detaining and imprisoning plaintiff without probable cause or reasonable suspicion, and harassing and assaulting her and depriving plaintiff of due process and equal protection of laws, defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

154.    In addition, defendants conspired among themselves and conspired with other individuals to deprive plaintiff of her constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

155.    Defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. Defendant officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant officers acted willfully, knowingly, and with the

specific intent to deprive plaintiff of her constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

156.  Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiff's state constitutional rights.

FIFTH CAUSE OF ACTION: ASSAULT AND BATTERY - against defendants City defendants, Margaret D. Blow & Murchison

157.  By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 156 of this complaint as though fully set forth herein.

158.  The conduct of the defendant officers, Margaret D. Blow and Murchison, as described herein, amounted to assault and battery.

159.  By reason of and as a consequence of the assault, plaintiff suffered and continues to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, pain and damage, and damage to reputation.

160.  Upon information and belief, defendant City of New York had sufficiently specific knowledge or notice of the police officers' propensity for acts complained of herein and that their acts could reasonably have been anticipated. However, defendant City of New York failed to take any appropriate actions to assure plaintiff's safety and security and failed to protect and/or safeguard plaintiff's interests.

161.  That defendant City of New York's failure to assure plaintiff's safety and security was a proximate cause of plaintiff's injuries.

SIXTH CAUSE OF ACTION: OTHER NEW YORK TORTS - against defendants

162.  By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 161 of this complaint as though fully set forth herein.

163.  The conduct of the City defendants, Margaret D. Blow and Murchison, as described herein, amounted to false arrest/imprisonment, illegal and unreasonable stop, frisk, search and seizure, negligence, wrongful eviction, conspiracy, special injury, abuse of process, harassment, abuse of power,

tortious interference with a contract, unjust enrichment, trespass, and malicious prosecution.

164.     The conduct of Housing Corp., Napco Holdings and Nakos, Margaret D. Blow and Murchison as described herein, amounted to negligence, wrongful eviction, conspiracy, special injury, abuse of process, harassment, abuse of power, tortious interference with a contract, unjust enrichment, trespass, and malicious prosecution.

165.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SEVENTH CAUSE OF ACTION: BREACH OF CONTRACT - against defendants Housing Corp., Napco Holdings & Nakos

166.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 165 of this complaint as though fully set forth herein.

167.     By unlawfully evicting the plaintiff as described herein, defendants Housing Corp., Napco Holdings and Nakos breached their lease agreement with plaintiff's deceased parents wherein the plaintiff was named as an occupant of the Apartment entitling the plaintiff to a right to renew the lease upon the expiration of the lease pursuant to N.Y. C$_{OMP}$. C$_{ODES}$ R. & R$_{EGS}$. tit. 9, § 2523.5(b).

168.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

EIGHTH CAUSE OF ACTION: NEGLIGENT & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - against defendants

169.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 168 of this complaint as though fully set forth herein.

170.     The defendants engaged in extreme and outrageous conduct, intentionally and recklessly causing severe emotional distress to plaintiff.

171.     Plaintiff's emotional distress has damaged her personal and professional life because of the severe mental pain and anguish which were inflicted through deliberate and malicious actions including the detention and imprisonment by defendants.

172.     Consequently, plaintiff has been damaged and hereby demands compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## NINTH CAUSE OF ACTION: NEGLIGENT HIRING AND RETENTION OF EMPLOYMENT SERVICES - against defendant City of New York

173.     By this reference, plaintiff incorporates each and every allegation and averment set forth in paragraphs 1 through 172 of this complaint as though fully set forth herein.

174.     Upon information and belief, defendant City of New York, through its various agencies and departments including but not limited to those mentioned herein, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

175.     Upon information and belief, defendant City of New York, through its various agencies and departments including but not limited to those mentioned herein owed a duty of care to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that an injury to plaintiff or to those in a like situation would probably result from such conduct described herein.

176.     Upon information and belief, defendant City of New York, knew or should have known through the exercise of reasonable diligence that the defendant officers were not prudent and were potentially dangerous.

177.     Upon information and belief, defendant City of New York's negligence in hiring and retaining the defendant officers proximately caused plaintiff's injuries.

178.     Upon information and belief, because of defendant City of New York's negligent hiring and retention of the defendant officers, plaintiff incurred and sustained significant and lasting injuries.

<u>RESPONDEAT SUPERIOR</u>

179.    Defendants, their officers, agents, servants, and employees are responsible for the damages suffered by plaintiff; City of New York, as employer of the defendant officers, responsible for their wrongdoing under the <u>doctrine of respondeat superior</u>. The Housing Corp., as employer of any named individuals, is responsible for their wrongdoing under the <u>doctrine of respondeat superior</u>. The Napco Holdings, as employer of any named individuals, is responsible for their wrongdoing under the <u>doctrine of respondeat superior</u>.

WHEREFORE, plaintiff respectfully prays judgment as follows:

    a.    For compensatory damages against all defendants in an amount to be proven at trial;

    b.    For exemplary and punitive damages against all defendants in an amount to be proven at trial;

    c.    For costs of suit herein, including plaintiff's reasonable attorney's fees; and;

    d.    For such other and further relief as the court deems proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: Brooklyn, New York
       October 15, 2013

UGO UZOH, P.C.

/s/

_____

By:    Ugochukwu Uzoh (UU-9076)
       Attorney for the Plaintiff
       304 Livingston Street, Suite 2R
       Brooklyn, N.Y. 11217
       Tel. No: (718) 874-6045
       Fax No: (718) 576-2685
       Email: u.ugochukwu@yahoo.com